UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

IN RE: APPLICATION FOR SEARCH WARRANT FOR TWO CELLULAR PHONES

ORDER

26-MC-2965

-------------------------------------------------------------------x

CLAY H. KAMINSKY, United States Magistrate Judge:

The government seeks a warrant to search two cellular phones that have been in its possession for more than two months since the time to execute a prior search warrant lapsed. In *United States v. Smith*, 967 F.3d 198 (2d Cir. 2020), the Second Circuit held that a delay of less than half that length violated the Fourth Amendment. *Smith* stated and clarified principles by which to determine when law enforcement's delay in seeking a warrant to search a seized personal electronic storage and communication device make the retention and search of that device unreasonable and therefore unconstitutional under the Fourth Amendment. 967 F.3d at 213. Applying those principles, I conclude that the warrant application must be denied.

## BACKGROUND

In January 2024, four individuals committed a robbery in this District.[1] NYPD officers arrested four suspects on the same night of the robbery and charged them criminally in state court. The cellular phones at issue here are Apple iPhones belonging to two of those suspects, who were juveniles at the time of the robbery (the

[1] The facts reported herein are derived from the FBI Task Force Officer's sworn affidavit in support of the July 23, 2026 warrant application and the exhibits thereto ("Warrant Aff.") as well as the government's July 23, 2026 letter brief regarding the application of *Smith* ("Gov't Br."). Both of these documents are under seal; I therefore recite only the details that are essential to my analysis.

"Juveniles"). The phones were seized without a warrant incident to the arrest of the Juveniles, and at least one of the Juveniles subsequently requested the return of his phone, through counsel, from the prosecuting District Attorney's Office. The state authorities retained both phones.

In June 2025, the other two suspects (the "Federal Defendants") were indicted on federal Hobbs Act and firearms charges based on the same January 2024 robbery; their case remains pending in this District. The Juveniles are not defendants in the federal case, having earlier resolved their cases with the District Attorney's Office.

An FBI Task Force Officer—that is, an NYPD Detective detailed to the FBI—took the phones from the NYPD's Property Clerk on April 24, 2026 pursuant to a grand jury subpoena. On May 1, 2026, the government sought and obtained a federal warrant upon probable cause to search the phones for evidence of the federal charges (the "May 1 Warrant").

The May 1 Warrant had to be executed within fourteen days, by May 15, 2026. Law enforcement did not execute the warrant by that date, and they did not apply for a new warrant until 67 days later, on July 21, 2026. The warrant application submitted that day acknowledged the delay and the need to obtain a new warrant but provided no factual explanation nor legal justification for the delay. I therefore denied the July 21 warrant application without prejudice to renewal upon a showing that the delay does not violate the Fourth Amendment under *Smith*.

On July 23, 2026, the government submitted a new warrant application, which explained that the May 1 Warrant was not executed by May 15 because of

administrative delays from the FBI's Computer Analysis and Response Team. Warrant Aff. ¶ 10. Following the expiration of the warrant on May 15, additional delays were due, in part, to other law enforcement priorities, as well as to personal issues experienced by a Task Force Officer on July 15, 16, and 20. *Id.* ¶ 11.

## DISCUSSION

In a letter brief that accompanies the July 23 warrant application, the government explains why it believes the Court should approve the application notwithstanding *Smith*. First, the government submits that "the balancing test set forth in *Smith* cannot be applied *ex ante* at the search warrant application stage" and "is properly addressed only upon a motion to suppress." Gov't Br. at 1. Second, the government submits that "standing has not been established to engage in a *Smith* inquiry." *Id.* at 1–2. Finally, the government submits that any analysis of the delay should be resolved in its favor in light of the May 1 Warrant. Gov't Br. at 2. I address each issue in turn.

### 1. The Court must consider *ex ante* whether any predicate illegality precludes issuance of the warrant.

*Smith* can be applied *ex ante* at the warrant application stage, and there is precedent in this Cicruit for doing just that. *See In re Application for Search Warrant*, 527 F. Supp. 3d 179 (D. Conn. 2020) (Merriam, then-M.J.) (applying *Smith ex ante* to resolve a warrant application). Indeed, it must be applied at the warrant application stage because the reviewing magistrate judge has a duty to "determine whether any predicate illegality preclude[s] issuance of the warrant." *United States v. Ganias*, 824

F.3d 199, 223 (2d Cir. 2016) (*en banc*) (citing *United States v. Thomas*, 757 F.2d 1359 (2d Cir. 1985)).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," through its *ex ante* warrant requirement. U.S. Const., amend. IV. "Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, reasonableness generally requires the obtaining of a judicial warrant." *Riley v. California*, 573 U.S. 373, 382 (2014) (cleaned up) (warrant required to search cellular phone seized incident to arrest). The warrant requirement "protects property owners . . . by interposing, *ex ante*, the 'deliberate, impartial judgment of a judicial officer . . . between the citizen and the police.'" *United States v. Grubbs*, 547 U.S. 90, 99 (2006) (quoting *Wong Sun v. United States*, 371 U.S. 471, 481–82 (1963)). It is thus "designed to prevent, not simply to redress, unlawful police action." *Steagald v. United States*, 451 U.S. 204, 215 (1981) (quotation marks omitted).

The "strong preference for warrants" is effectuated by giving "great deference" to magistrate judges' warrant determinations and by withholding from suppression evidence obtained by law enforcement in good faith reliance on a warrant later found to be defective. *United States v. Leon*, 468 U.S. 897, 914, 920 (1984). The exclusion of evidence upon an *ex post* motion to suppress "is not a personal constitutional right, nor is it designed to redress the injury occasioned by an unconstitutional search." *Davis v. United States*, 564 U.S. 229, 236 (2011) (cleaned up). The exclusionary rule's "sole purpose" is rather to deter *future* Fourth Amendment violations. *Id.* at 236–37.

Precisely because suppression motions and damages actions are insufficient to implement the Fourth Amendment's prohibition against unreasonable searches; the Constitution generally requires prior judicial approval in the form of a warrant. *Steagald*, 451 U.S. at 215–16.

*Smith*, as the government notes, was decided in the post-search suppression posture. The New York State Police had seized a tablet that belonged to the defendant after a trooper glimpsed an image on its screen that was possibly child pornography. *Smith*, 967 F.3d at 202. But the police then waited 31 days before applying for, and obtaining, a warrant to search the tablet. *Id.* The Second Circuit held that "in the absence of extenuating reasons for this month-long delay, it was unreasonably long in violation of the Fourth Amendment." *Id.* It explained that the Fourth Amendment allows the police to seize property without a warrant temporarily, provided that they act with diligence to obtain a warrant in a reasonable period of time thereafter. *Id.* at 205 (citing *Illinois v. McArthur*, 531 U.S. 326, 334 (2001)). But "even a seizure based on probable cause is unconstitutional if police act with unreasonable delay in securing a warrant." *Smith*, 967 F.3d at 205 (quoting *United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998)). After analyzing the relevant factors, the Court of Appeals held that "[t]he delayed search of Smith's tablet was unreasonable in violation of the Fourth Amendment." *Smith*, 967 F.3d at 211.

Although the Second Circuit declined to apply the exclusionary rule in *Smith*, it stressed that its decision "stated and clarified principles . . . that shall guide law

enforcement officers with respect to what circumstances establish an unreasonable delay under the Fourth Amendment." *Id.* at 213.

> We have discussed how the length of delay has independent weight as a factor and how a delay of one month or more is ordinarily too long for an officer to apply for a warrant. We have described how seizure of personal electronic storage and communication devices must be given heightened consideration in terms of the defendant's interests. And we have explained how the general press of police business may not justify a lengthy delay absent particular evidence showing why other police duties reasonably took precedence. These principles shall likewise inform the application of the exclusionary rule in future cases.

*Id.*

Law enforcement officers, then, are clearly to expected to apply *Smith*'s principles *ex ante* when seeking a search warrant for seized devices. A magistrate judge is no less well equipped to do same upon review of a law enforcement officer's affidavit in support of a search warrant application. *See, e.g.*, *Thomas*, 757 F.2d at 1368 (law enforcement officer could rely on the determination of "[t]he magistrate, whose duty it is to interpret the law" regarding legality of prior canine sniff that formed basis for later warrant application). Indeed, Judge Merriam, now of the Second Circuit Court of Appeals, applied *Smith*'s principles without difficulty at the warrant application stage when she was a magistrate judge in Connecticut. *See In re Application for Search Warrant*, 527 F. Supp. 3d at 183–88.

Because the purpose of the warrant requirement is to prevent unreasonable searches and seizures *ex ante*, a magistrate judge ruling on a warrant application must "determine whether any predicate illegality preclude[s] issuance of the warrant." *Ganias*, 824 F.3d at 223. In *Ganias*, the Second Circuit was asked to determine whether the government had violated the defendant's Fourth Amendment

rights "when, after lawfully copying three of his hard drives for off-site review pursuant to a 2003 search warrant, it retained these full forensic copies (or 'mirrors'), which included data both responsive and non-responsive to the 2003 warrant, while its investigation continued, and ultimately searched the non-responsive data pursuant to a second warrant in 2006." *Id.* at 200. The Court of Appeals determined *en banc* that it did not need to resolve that question because the government was entitled to good faith reliance on the 2006 warrant. It explained that the good faith doctrine applied because law enforcement had disclosed the pertinent facts regarding the retention of the mirrored copies to the magistrate judge in connection with the 2006 warrant application. *Id.* at 224. "The magistrate therefore had sufficient information on which to determine whether such retention precluded issuance of the 2006 warrant." *Id.*

The seized-data-retention issue in *Ganias* closely resembles the post-seizure-delay issue in *Smith*. Like the magistrate judge in *Ganias*, I have sufficient information on which to determine whether the government's retention of the phones without an authorizing warrant now precludes the issuance of a new warrant. My duty is to make that determination now, not to leave it to a post-search suppression motion or damages action. *See Steagald*, 451 U.S. at 215–16.

**2. Whether the Federal Defendants have standing to challenge the search is irrelevant.**

It is irrelevant to this determination whether, as the government submits, the Federal Defendants lack standing to challenge the requested search of the Juveniles' phones. The Fourth Amendment "right of the people" to be secure in their effects does

not apply to defendants only. I must consider the Juveniles' property and privacy interests.

The subject of an arrest warrant, apprehended in a third party's residence, lacks standing to claim that his Fourth Amendment rights were violated because entry into the residence was not authorized by a search warrant. *United States v. Bohannon*, 824 F.3d 242, 250 (2d Cir. 2016). But it is beyond doubt that the same entry is unlawful as to the third-party resident. *Id.* at 249. In order to protect that third party from an unreasonable search, the Fourth Amendment requires that the entry be authorized by a search warrant. *Id.*; *Steagald*, 451 U.S. at 213 (requiring a search warrant "safeguards [that] individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police").

So too here. The phones at issue belong to the Juveniles, were seized from the Juveniles, and contain the Juveniles' data. I must consider whether the Fourth Amendment rights of the Juveniles are violated by law enforcement's retention of the phones and the requested search. *See In re Application for Search Warrant*, 527 F. Supp. 3d at 184 (considering, under *Smith* at the warrant-application stage, the property interests of "each individual affected by the seizure, not just the person against whom the evidence sought is likely to be used").

**3. Applying *Smith*, law enforcement's unreasonable delay precludes issuance of the requested warrant.**

Applying the principles stated and clarified in *Smith*, I conclude that the instant warrant application must be denied because the delayed search it seeks is unreasonable in violation of the Fourth Amendment. The Court of Appeals identified

four factors that are generally relevant to whether the police have delayed an unreasonable amount of time before seeking a warrant: "[1] the length of the delay, [2] the importance of the seized property to the defendant, [3] whether the defendant had a reduced property interest in the seized item, and [4] the strength of the state's justification for the delay." *Smith*, 967 F.3d at 206. In analyzing these factors, I assume without deciding that the delay at issue is limited to the 67 days between when the May 1 Warrant expired and when the government applied for a new warrant on July 21, 2026. *See* Gov't Br. at 7.

First, the length of the delay, which bears "independent weight," is more than twice as long the 31 days found unreasonable in *Smith*. 967 F.3d at 207. Much shorter delays than that have likewise been found unreasonable. *See United States v. Eisenberg*, 707 F. Supp. 3d 406, 413–14 (S.D.N.Y. 2024) (23-day delay unreasonable); *United States v. Chowdhury*, No. 23-CR-278 (NRM), 2025 WL 2987917, at *25 (E.D.N.Y. Oct. 22, 2025) (9-day delay unreasonable); *cf. United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998) ("In some circumstances eleven days might well constitute an unreasonable delay."). This factor weighs against issuing a new warrant.

Second, the iPhones at issue here are presumed to be of importance to their owners absent evidence to the contrary because of the unique properties of a modern cell phone. *See Smith*, 967 F.3d at 207; *Chowdhury*, 2025 WL 2987917, at *22–23. Both the Second Circuit and the Supreme Court have recognized the "fundamental distinction between one's ordinary personal effects and one's personal electronic devices." *Smith*, 967 F.3d at 207; *see, e.g.*, *Riley*, 573 U.S. at 393 (observing that

"[m]odern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse"); *Ganias*, 824 F.3d at 218 (acknowledging that the "search and seizure of digital media is, in some ways, distinct from what has come before"). Thus, in the delayed-search context, the "seizure of personal electronic storage and communication devices must be given heightened consideration in terms of the defendant's interests." *Smith*, 967 F.3d at 213. In addition, the government has candidly disclosed that at least one of the Juveniles requested the return of his phone. This factor, too, weighs against issuing the requested warrant.

Third, the government argues persuasively that the May 1 Warrant reduced the Juveniles' property interest vis-à-vis the government's interest in retaining the property for investigation or prosecution, and I agree that this factor weighs in favor of issuing the requested warrant. *See* Gov't Br. at 6; *see also In re Application for Search Warrant*, 527 F. Supp. 3d at 186 (that phones were seized and could have been searched pursuant to expired state search warrant weighed strongly in favor of the government). But I am mindful that the "existence of probable cause is . . . far from dispositive to deciding the reasonableness of the ensuing delay" because each phone's "evidentiary value turn[s] solely on what the police might find from a search of its contents" and they have not yet performed the search. *Smith*, 967 F.3d at 209. Courts demand the expedient search of seized evidence "to avoid interfering with a continuing possessory interest for longer than reasonably necessary, in case the search reveals no evidence (or permissibly segregable evidence) of a crime and the

item has no independent evidentiary value and is not otherwise forfeitable." *Id.* at 205 (quoting *United States v. Sparks*, 806 F.3d 1223, 1340 (11th Cir. 2015)). The government now argues that it has already "executed" the May 1 Warrant within the meaning of Federal Rule of Criminal Procedure 41(e)(2)(B) simply by possessing it at the time it received the search warrant. Gov't Br. at 6–7. Whatever the merits of the government's legal theory, as a factual matter no search has occurred. *See* Warrant Aff. ¶ 10 ("Law enforcement agents intended to execute the May 1 Warrant on or before May 15, 2026, but did not do so by that date . . . .").[2] Another two months have passed without law enforcement's ascertaining whether the phones have evidentiary value, and may therefore be retained, or whether they do not have evidentiary value. and must therefore be returned. Thus, although this factor favors the government, it is not dispositive. *See Smith*, 967 F.3d at 209.

Fourth, the justification for the delay is obviously insufficient. The government writes that "the two-month delay was due, in part, to other law enforcement priorities and unexpected personal events." Gov't Br. at 7. But unexpected personal events affected only one officer and accounted for only three of the 67 days. And "the general press of police business may not justify a lengthy delay absent particular evidence showing why other police duties reasonably took precedence." *Smith*, 967 F.3d at 213. Finally, although I confine my analysis to the two-month delay since the expiration of the May 1 Warrant, I am mindful that that delay was not an isolated occurrence

[2] I am also mindful that the law enforcement affidavit submitted in support of the July 21, 2026 warrant application stated: "Law enforcement can no longer execute the May 1st Warrant because more than 14 days have passed since the warrant was authorized."

but rather part of a continuing course of neglect. This factor weighs against issuing the warrant.

Three of the four *Smith* factors thus weigh against the government, and the only factor in its favor—the judicial determination of probable cause embodied in the May 1 Warrant—is more than outweighed by the significant and unjustified delay since that warrant expired. I therefore conclude that the circumstances presented establish an unreasonable delay under the Fourth Amendment.

* * * * *

Because I conclude that the delayed search of the phones would be unreasonable and in violation of the Fourth Amendment, the warrant application is denied.

SO ORDERED.

/s/ Clay H. Kaminsky
CLAY H. KAMINSKY
United States Magistrate Judge

Dated: July 27, 2026
Brooklyn, New York